150 So.2d 365

**Lee J. LEDBETTER**

v.

**FROSTY MORN MEATS et al.**

**4 Div. 43.**

Supreme Court of Alabama.

Feb. 21, 1963.

492

John W. Gibson, Troy, and Tipler & Fuller, Andalusia, for appellant.

Oliver W. Brantley, Troy, for appellees.

COLEMAN, Justice.

This is an appeal by plaintiff from a voluntary nonsuit induced by the ruling of the court sustaining defendants' demurrer to plaintiff's Replications 3 and 4, in an action for personal injury.

To the complaint charging negligence, defendants pleaded the general issue and that plaintiff had executed and delivered to defendants, in consideration of $2,292.93 paid to plaintiff by defendants, a release of plaintiff's claim against defendants for the liability sued on.

Plaintiff filed Replications 3 and 4 wherein plaintiff alleged that he was induced to execute the release by the fraud of an agent of defendants.

The reporter will set out Replication 3 in extenso. Replication 4 is the same as 3, except that 4 contains the additional allegation that plaintiff had no knowledge of the contents of the release prior to the filing of defendants' pleas 2 and 3, and that plaintiff, upon the filing of his replication, tendered $2,292.93 to defendants and delivered the same to the clerk of the court.

Defendants' demurrer to the replication contains the following ground:

"18. It does not appear that the consideration for the release was restored or tendered to be restored within a reasonable time after discovery of the alleged misrepresentation."

Plaintiff's single assignment of error recites:

"1. The Court erred in sustaining defendants' demurrer to Plaintiff's replications 3 & 4. (TR. p. 14.)"

In Western Railway of Alabama v. Arnett, 137 Ala. 414, 34 So. 997, the assignment of error based on the ruling of the court in sustaining the demurrers to pleas 2, 3, and 8 was as follows:

" 'The court erred in sustaining plaintiff's demurrers to defendant's pleas numbered 2, 3 and 8.' " (137 Ala. 418, 34 So. 999.)

This court said:

"It may be said as to sustaining the demurrers to pleas 2, 3, and 8, that if any of the grounds were properly sustained, the assignment of error cannot be allowed, for the reason that it is not based upon these rulings *severally,* but upon them as a whole. Sustaining the demurrer to the eighth plea was good, and, therefore, the ruling sustaining the demurrers to the three pleas was without error.—Goodwin v. Whitehead, 95 Ala. 409, 11 South. 65; Kennon v. W. U. T. Co., 92 Ala. 399, 9 South. 200;

Coleman v. Pike County, 83 Ala. 326, 3 South. 755." (137 Ala. 425, 34 So. 1000.)

A demurrer is a single entity of pleading and the numbered grounds set up do not constitute separate units. If any ground is good, the demurrer should be sustained. It should not be overruled unless each of the grounds fails to point out some insufficiency. The assignment of error complaining of the ruling on demurrer should be for sustaining (or overruling) the demurrer to a certain numbered plea (or count) (or replication). Central of Georgia Railway Co. v. Hinson, 262 Ala. 223, 226, 227, 78 So.2d 286.

In the Hinson case, supra, the second assignment was that the court erred in sustaining demurrers 6, 7, 8, and 9 to appellant's answer to the complaint. This court said that the judgment and assignment of error misconceived the nature of a demurrer and proceeded to state the rules we have copied above. This court further said:

"It is appropriate and necessary to assign as error the judgment in respect to each plea separately if a separate consideration of each is insisted upon. The assignments are not so set up. (Error) Being assigned to all pleas jointly, the judgment is not due to be reversed if the demurrer on any of its grounds pointed out a substantial defect in any of the pleas, although it may not have pointed out a defect in all of them. * * * The second assignment of error cannot be upheld." (Par. Supplied.) (262 Ala. 223, 227, 78 So.2d 286, 289.)

In the case at bar, it is necessary to assign as error the judgment in respect to each replication separately if a separate consideration of each is insisted upon. That has not been done. There is not a separate assignment as to each replication. The only assignment is with respect to the judgment as to both replications jointly, and the judgment sustaining the demurrer is not due to

be reversed if the demurrer, on any of its grounds, pointed out a substantial defect in either replication, although it may not have pointed out a defect in both replications. Cases supporting this rule are cited in Alabama Digest, Appeal & Error, Key No. 737. See Middleton v. Western Union Telegraph Co., 197 Ala. 243, 72 So. 548.

Plaintiff does not argue that Replication 3 alleges return, or offer to return, the consideration plaintiff received on execution of the release. On the contrary, plaintiff argues that he was under no duty to return the consideration because the allegations of the replication show that the money paid to plaintiff does not constitute part payment of the claim sued on.

Plaintiff relies on Western Ry. of Alabama v. Arnett, supra, and the dissenting opinion of Samford, J., in United States Cast Iron & Foundry Company v. Marler, 17 Ala.App. 358, 86 So. 103.

In the Arnett case, plaintiff sued for personal injury and defendant pleaded a release executed by plaintiff, the consideration expressed therefor being the payment of $25 to plaintiff. To the plea of release, plaintiff replied that, while he was suffering from the injury, the $25 had been given to him by defendant's agent, who represented to plaintiff that the president of defendant corporation desired to make plaintiff a present of $25, and thereupon the agent handed to plaintiff $25 in money and stated to plaintiff that defendant company would look after plaintiff when he got well and give him a permanent job when he got up; and that the agent thereupon produced a paper and asked plaintiff to sign it and told plaintiff the paper did not amount to anything, that it simply stated that plaintiff had no ill will against defendant company; that, acting on the representations of defendant's agent, plaintiff signed the paper; and that plaintiff had no knowledge of contents of paper or that it was a release except as aforesaid.

To the replication, defendant rejoined that plaintiff knew or ought to have known the contents of the release, and, with this

knowledge of duty, plaintiff has never offered to return to defendant the consideration received for execution of the release.

The trial court sustained demurrer to this rejoinder. On appeal, sustaining demurrer to the rejoinder was held not error, for the reason that the rejoinder alleged that plaintiff "ought to have known" the contents of the release, without alleging that plaintiff did know the contents of the release. This court said that plaintiff, without *knowing* the contents of the release was not bound by it, and, moreover, the replication alleged that the money was a gift and, if so, plaintiff was under no duty to return it.

The instant case can perhaps be most easily distinguished from Arnett by the fact that the allegations in Arnett show that the $25 was given to plaintiff as a gift prior to any mention of the paper which plaintiff signed and which was a release, and, because the payment or gift was not the consideration for the release, plaintiff was under no obligation to return the $25 as a condition precedent to rescission or repudiation of the release. In the instant case, the allegations fairly show, we think, that the $2,292.93 was paid to plaintiff at the time of and as consideration for plaintiff's signing the instant release, although it is further alleged that the paper signed was not the paper plaintiff thought he was signing. In Arnett, the alleged payment was not shown to be the consideration for the release; in the instant case the alleged payment is shown to be the consideration for the release. On that difference, Arnett, as we view it, may fairly be distinguished and is not authority for holding tender unnecessary in the instant case.

The Marler case is more difficult. In principle, the Marler case can hardly be distinguished from the case at bar.

In Marler, the basic question, with which the instant case is concerned, was raised by the evidence and not by the pleadings which were in short by consent.

In Marler, plaintiff sued his employer for personal injury and recovered judgment, from which defendant appealed. The opinion of the Court of Appeals states that plaintiff, in consideration of $50, signed a paper releasing defendant from liability. It was conceded that plaintiff executed the instrument, received the consideration recited therein, and had not returned the consideration to defendant. Plaintiff sought to avoid the effect of the release by showing that it had been obtained by fraud. Plaintiff's testimony was that while he was in a helpless condition, he, by the fraudulent representations of defendant's agent that the paper was a receipt for money to which plaintiff was entitled under an insurance contract, was caused to sign the release.

The Court of Appeals held that if plaintiff's contentions were true, he had a right to repudiate the release if it was obtained by fraud, but, he could not retain the consideration and repudiate the release at the same time.

Judge Samford, in a dissent, took the view that if, as a matter of fact, the $50 was paid to plaintiff as insurance due him, and the insurance was due him, which Judge Samford says was shown under one phase of the evidence, plaintiff got only that to which he was entitled and the paper claimed by defendant to be a release was without consideration and for that reason would be void. Judge Samford thus reasoned that plaintiff was not bound to return the $50 to defendant, as a condition precedent to plaintiff's rescission of the release.

On application for certiorari, the Supreme Court denied the writ. Ex parte Marler, 204 Ala. 342, 86 So. 108. All the justices sitting concluded that the writ should be denied. Four of the justices, however, expressed the judgment that the dissenting opinion of Judge Samford correctly stated the law. The concurrence of these four justices in denial of the writ appears to rest on the view that the Court of Appeals, in the majority opinion, found as a fact that the evidence was insufficient to sustain plaintiff's contention that the $50 had been paid to plaintiff for insurance.

Two of the justices expressed the view that the opinion of the Court of Appeals by Presiding Judge Bricken was correct, citing Birmingham Railway, Light & Power Co. v. Jordan, 170 Ala. 530, 54 So. 280.

The dissenting opinion of Judge Samford in Marler supports the contention of plaintiff in the instant case that he was not bound to return the $2,292.93 as a condition precedent to repudiation of the instant release. Under that opinion, Replication 3 in the instant case would not be subject to the ground of demurrer that the replication fails to allege that plaintiff returned the consideration within a reasonable time after discovery of the fraud. Examination of the cases, however, persuades us that the principle expressed in Judge Samford's opinion has not been followed in subsequent decisions, and, in fact, has been expressly rejected by this court.

Marler, 204 Ala. 342, 86 So. 108, is cited in Alabama Co. v. Brown, 207 Ala. 18, 24, 27, 92 So. 490, where a divided court, on rehearing, held that an administratrix, seeking to recover for death of intestate, was not bound, as a condition precedent to her right to maintain the action, to restore to defendant a sum paid to a prior administrator by defendant in an allegedly fraudulent settlement of the claim for death of intestate. In the opinion of Sayre, J., the minority opinion on original deliverance which became the opinion of the court on rehearing, the reason for the holding appears to be stated as follows:

"* * * appellee should not be charged with the duty of returning to appellant the sum of money which appellant gave to appellee's predecessor in the administration as part and parcel of their mutual scheme—as the replication alleges—to defraud the widow of deceased, for whose benefit this action is maintained, nor do the authorities cited to the prevailing opinion hold to any such view. The identity of appellee as administrator de bonis non, so called, with his predecessor who took part in

the fraudulent compromise and settlement alleged is not an identity in fact: the fiction of identity is indulged to advance the ends of justice and for no other purpose or end. * * * Cases cited in the prevailing opinion hold nothing to the contrary of the view here presented. They hold only that the party who would disaffirm a fraudulent contract must return what he has received under it. Neither the appellee nor the widow of decedent, for whose benefit he sues, has received anything in the case at bar." (207 Ala. 18, 25, 92 So. 490, 495.)

The reason for holding plaintiff not bound to return the consideration appears to be that because plaintiff had not received it, she was under no duty to return it. In a concurring opinion by Thomas, J., he states that the majority opinion on original hearing was grounded on the principle of rescission stated generally in certain cases; including Birmingham Railway, Light & Power Co. v. Jordan, 170 Ala. 530, 54 So. 280; "U. S. Cast I. P. & F. Co. v. Marler, 204 Ala. 342, 86 South. 108"; and that an examination of those "authorities discloses a rescission between the original parties to the contract or release alleged to have been procured by fraud." 207 Ala. 27, 92 So. 497. In any event, Alabama Co. v. Brown, supra, differs from the instant case in that there the consideration had not been received by plaintiff and here the consideration is alleged to have been received by plaintiff.

The Marler case, 204 Ala. 342, 86 So. 108, is also cited in Payne v. Coleman, 18 Ala. App. 525, 93 So. 222, but there the court held "there is no evidence upon which a jury could reasonably base a verdict that the release was not binding."

■ What the plaintiff is contending for, in the case at bar, is application of the principle that where a release is obtained by fraud in the execution, as distinguished from fraud in the inducement, the releasor is under no duty to return the consideration

before the releasor can rescind the release. An excellent annotation on this topic appears in 134 A.L.R. 6. To discuss the reasons for this rule as followed in some states would unduly lengthen this opinion and would serve no useful purpose because this court has said:

> "Our authorities have adopted the view that when a contract is procured by fraud, and defendant receives goods or money as a feature of the consideration, there is a duty to exercise an election to rescind and give notice of that election in due time, although the fraud related to the contents of the paper. These authorities make no distinction by reason of the fraud being in that respect. Standard Tilton Milling Co. v. Mixon, 243 Ala. 309, 9 So.2d 911; Illinois Central R. Co. v. Johnston, 205 Ala. 1, 87 So. 866; Commercial Finance Co. v. Cooper Bros., 196 Ala. 285, 71 So. 684; Birmingham R. L. & P. Co. v. Jordan, 170 Ala. 530, 54 So. 280.

> "The cases in other states seem to make such a distinction. See 134 A.L.R. 12; Page on Contracts, page 36. But this State has not accepted that view." Drinkard v. Embalmers Supply Co., 244 Ala. 619, 622, 14 So.2d 585.

So, in the case at bar, we hold that the allegations of Replication 3 show that plaintiff was bound, as a condition precedent to avoiding the release, to return the consideration therefor within a reasonable time after discovery of the alleged fraud; and, because it is not averred that plaintiff has done so, Replication 3 was subject to the ground of demurrer taking that point. Birmingham Railway, Light & Power Co. v. Jordan, 170 Ala. 530, 54 So. 280. The $2,292.93 was "* * * the consideration for the execution of the paper, whether it was such a paper as the plaintiff intended to sign or not. It was the subject-matter of the release. To permit her (plaintiff) to retain the money that she got under the release, and to also repudiate same, would al-

low her to retain the benefits and reject the burdens. It would allow her to divide or separate the transaction by accepting the favorable part and rejecting what was unfavorable to her. There would be no rescission in toto, no restoration of the status quo, notwithstanding the plaintiff was in a position to do so. It would not do to let her hold the money, and at the same time repudiate the paper, under which she acquired same, by merely claiming that it was paid to her for another purpose, and notwithstanding her replication in effect, admits that it was the consideration for the release in question. * * *" (Par. Supplied.) (170 Ala. 537, 538, 54 So. 282.)

The error being assigned to the ruling on both replications jointly, and the ruling on Replication 3 not being error, the ruling on Replication 4 will not be considered.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.